## Adams' Admr., et al. v. Wells.

(Decided May 16, 1913).

### Appeal from Lincoln Circuit Court.

1. Judgment—Conclusiveness.—The joint owner of property sold on the ground of indivisibility, who is sick at the time and unable to attend the sale, and who procures one to attend the sale and purchase the property for him, but the person so procured purchases the property in his own name and thereafter fraudulently refuses to convey the property to such joint owner, is not precluded by his failure to file exceptions to the report of sale and by the judgment of confirmation, from instituting an independent action to recover the property.

2. Estoppel.—Where an answer pleads an estoppel, a reply denying many of the material facts necessary to constitute the estoppel is not bad on demurrer.

R. H. TOMLINSON for appellants.

P. M. McROBERTS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Overton Adams and Charles Singleton each owned an undivided one-third interest in a small tract of land lying in Lincoln County, Kentucky. Annie S. Gover, claiming to be the owner of the other one-third interest, instituted an action against Adams and Singleton to sell the land on account of its indivisibility. On final hearing, the court adjudged that Adams, Singleton and Annie S. Gover were each the owners of an undivided one-third interest in the land, and directed a sale of the land. The sale took place, and J. T. Wells became the purchaser at the price of $300, and executed bond therefor with J. N. Singleton as surety. Thereafter exceptions were filed by Annie S. Gover and overruled by the court. An order

was entered confirming the report of sale. At the same term another order was entered directing the commissioner to collect the sale bonds and, after the payment of the costs of the action, to distribute the proceeds as follows: one-third to Overton Adams; one-third to Charles Singleton; one-third to Annie S. Gover. Thereafter an order was entered reciting the full payment of the purchase price by the purchaser, Wells, and directing the commissioner to convey the land to him. On March 19, 1905, Adams filed a motion and affidavit reciting the fact that the land had been sold, the sale confirmed and the commissioner directed to collect the sale bonds and distribute the proceeds according to the adjudged rights of the parties; that since the institution of the action he had purchased the interest of Charles Singleton in the land in question and had received a deed therefor. He therefore asked that the order of distribution be modified to the extent that the commissioner be directed to pay him the one-third of the net proceeds ordered to be paid Singleton. Thereupon the court entered an order setting aside the order of distribution in so far as it directed the commissioner to pay any of the proceeds to Singleton, and reserving for further adjudication the question whether or not that part of the proceeds due Singleton should finally be paid to Adams. Adams also filed an answer and cross petition containing similar allegations to those contained in the affidavit with reference to his purchase of Singleton's interest, and asking that the amount adjudged to be paid to Singleton be paid to him. He further alleged that Singleton was a non-resident who lived in the State of Michigan, but his post office was unknown to affiant, and asked for a warning order and the appointment of an attorney to inform Singleton of the nature and pendency of the cross petition. The record fails to show that any of the proceeds of the sale, either for his part of the land or for Singleton's part of the land, was ever paid to Adams.

Adams died during the year 1905, intestate, unmarried and without issue. He left surviving him several collateral kindred. His administrator and heirs brought this action to recover the land in controversy. The basis of the action is that Overton Adams, while the sale was pending, was sick and unable to attend court or to look after his interests in the matter. For that reason he procured J. T. Wells, who at the time was making his home with him, to go to Stanford, where the sale was to

take place, and purchase the land for him. He also procured J. N. Singleton to go on Well's bond. Wells agreed to go to Stanford and purchase the land for Adams. Instead of purchasing the land for Adams, he purchased it in his own name. He thus fraudulently acquired the title to and got possession of the property. A demurrer was filed to the petition and sustained. Thereupon plaintiffs amended their petition and alleged that the deceased, Overton Adams, had no knowledge of the fraud set out in the petition until after the confirmation of the commissioner's report, but believed up to that time that the defendant, Wells, was acting in good faith with him and for him, as he agreed to do. A demurrer was then filed to the petition as amended. Defendant filed an answer in which he denied the allegations of the petition. He further pleaded in substance all of the proceedings had in the case of Annie S. Gover, plaintiff, against Overton Adams, defendant He further pleaded that he informed Adams on the day of the sale that he had purchased said land and executed bond therefor, and that his acts therein were approved by Adams. The answer also alleges that Adams knew that defendant had purchased the land and been reported as the purchaser thereof, and offered or made no objection thereto, and filed no exceptions to the confirmation of the report. There is also an allegation to the effect that exceptions were filed by Annie Gover, and thereafter additional exceptions were filed by her; that these exceptions were heard by the court and overruled. Thereafter the sale was confirmed. It is also alleged that Adams not only knew of all the proceedings in the case, but knew of the fact that defendant had borrowed money from the Crab Orchard Banking Company to pay the sale bond. The answer further pleads that Adams filed in the case an affidavit and also an answer and cross petition, asking that the proceeds of the sale theretofore adjudged to Singleton be paid to him, and that the proceeds theretofore adjudged to Singleton were actually paid to Adams. By reason of these facts it is alleged that plaintiffs were estopped from claiming the land or any part thereof. Thereupon plaintiffs moved the court to strike from the answer of defendant all that portion with reference to the fact that exceptions to the report of sale were filed by Annie S. Gover. Plaintiff then filed a reply, denying that Adams knew on the day of the sale of the purchase of the land by defendant, or of the fact that a report of

sale had been filed or that defendant had been reported as purchaser, and further denying that he knew anything about the proceedings except that defendant had agreed to represent deceased as his agent, and represented to dceased that he was so acting, and that deceased never knew anything to the contrary until defendant procured the deed to the property. The reply further denies that Adams ever received the price of the Singleton land through the master commissioner, or anyone else. There is also a denial of certain allegations in the answer with respect to the proceedings in the case of Gover v. Adams.

A demurrer was sustained by the reply and the petition of plaintiffs dismissed. From that judgment this appeal is prosecuted.

It is insisted that the reply was insufficient because it simply denied certain allegations in the answer shown by the record in the case of Gover v. Adams, and admits that no exceptions to the report of sale were filed by Adams. In this connection it is argued that Adams being a party to the suit, and having failed to file any exceptions to the report of sale, and the sale having been confirmed, the judgment of confirmation is conclusive upon Adams and plaintiffs, who claim through him. The basis of plaintiffs' action is that the defendant, Wells, agreed to buy the land for Adams, and fraudulently took title thereto in his own name, and thereafter refused to convey the property to Adams. If such was the case, then defendant, Wells, notwithstanding the fact that he became the purchaser, and the sale to him was confirmed, might have complied with his agreement by conveying the property to Adams. That being true, it was not necessary for Adams to file exceptions to the sale in order to protect his rights in the matter. Until the defendant, Wells, refused to convey the title to him, he had the right to assume that Wells would comply with his agreement. Adams and those claiming through him are not, therefore, concluded by the judgment of confirmation, but had the right, as was done in this case, to file an independent action, setting forth the circumstances of the agreement by which the purchase by Wells was made, and his subsequent refusal to comply with the agreement. However, if all the allegations contained in the answer are true, they would undoubtedly constitute an estoppel. As a matter of fact, however, the reply denies many of these allegations. It denies that Adams knew anything about Wells having purchased the property in his own name. It denies

that he in any way approved of the sale to Wells. It denies that he received any portion of the proceeds of the sale, and the record in the case of Gover v. Adams fails to show that he did. If, then, as a matter of fact, Adams was sick at home and was trusting to Wells to look after his interests in the matter, and to purchase the property for him, and did not approve of the sale to Wells individually, and did not receive any of the proceeds of the sale, we do not think those claiming through him are precluded from showing the real facts and circumstances under which Wells agreed to purchase the land for Adams. As many of the facts necessary to constitute an estoppel were denied by the reply, we think the court erred in sustaining the demurrer to the reply.

Judgment reversed and cause remanded for proceedings consistent with this opinion.